Hutchinson and another vs. The Holmes Sanitarium.

HUTCHINSON and another, Respondents, vs. THE HOLMES SAN-
ITARIUM, Appellant.

*March 14 — March 27, 1896.*

*Real estate brokers: Commissions: Rescission of contract.*

A contract of agency for the sale of land, by which the agents were to receive $1,000 in case the owner himself effected a sale, is *held* to have been abrogated by a subsequent letter from the owner, written after much correspondence, in which, after stating that the former contract had been *practically annulled,* he made a clear and complete proposition for a new contract containing no provision for compensation except in case of a sale effected by the agents, and the acceptance of such proposition by the agents without objection to the statement that the former contract had been annulled.

Hutchinson and another vs. The Holmes Sanitarium.

APPEAL from a judgment of the circuit court for St. Croix county: E. B. BUNDY, Circuit Judge. *Reversed.*

Action to recover brokers' commission on the sale of real estate. The plaintiffs, in December, 1893, were partners at Weyauwega, Wis., and were doing a real estate and commission business, making a specialty of the sale or exchange of medical properties and business. The defendant at the same time was a corporation at Hudson, Wis., organized for the cure of the sick, and owning and operating a large building, called the "Holmes Sanitarium," at Hudson, with grounds and medical appliances. Dr. Irving D. Wiltrout was president of the corporation and general manager of its business. It is claimed that Dr. Wiltrout was in fact the real owner of the entire stock of the corporation at the time of the execution of the contracts hereinafter named, although nominally all but one share of such stock was in the name of his wife and various relatives and employees of the institution. It certainly seems to be a fact that Wiltrout, with the tacit consent of the stockholders, carried on the business in his own way, and had no meetings of directors. On the 22d day of December, 1893, Wiltrout made a contract with the plaintiffs, by which he placed the sanitarium in the hands of the plaintiffs for sale upon commission. The plaintiffs claim that in making this contract Wiltrout acted as agent and on behalf of the corporation, while the defendant claims that Wiltrout had no authority, express or implied, to act for the corporation in such a matter. In this contract Wiltrout is described as "I. D. Wiltrout, M. D., proprietor of the Holmes Sanitarium, party of the first part," and the plaintiffs are named as parties of the second part.

It is unnecessary to set forth all the terms of the contract. The plaintiffs agreed to take the sole agency for the sale of the sanitarium; to place it in the hands of five subagencies in five great cities, which are named; to pay all advertising expenses, all advertisements to be approved by Wiltrout; not to keep the sole agency longer than six months, with

the right, however, to sell within a year to any person with whom negotiations had been opened during said six months; and not to make false representations as to the reasons for sale. The selling price was fixed at $65,000, payable $15,000 in cash, $20,000 by the assumption of a mortgage on the property, and the balance in instalments secured by mortgage on the property. Then follow the following provisions as to commissions: "And in consideration of the services of said *Hutchinson & Jones*, the said party of the second part, the said party of the first part hereby agrees to pay said *Hutchinson & Jones* a commission of five thousand dollars, payable as soon as the sale of the Holmes Sanitarium is made, and the said sum of five thousand dollars to be paid to the said *Hutchinson & Jones* when the first payment of fifteen thousand dollars is received by the party of the first part from the purchaser. It being distinctly understood and agreed that the said *Hutchinson & Jones* shall receive the said sum of five thousand dollars as commissions whether the same is made by them directly or through any of their subagents; but, should the sale thereof be effected by the proprietor thereof, Dr. I. D. Wiltrout, in person, without any assistance from the said party of the second part or their subagents, then the commission or fees coming to said *Hutchinson & Jones* shall be one thousand dollars, which sum shall be payable as soon as contract of sale is completed." The contract further provided that Wiltrout gave the sole agency for the sale of the sanitarium to the plaintiffs, but that this should not interfere with the sale of the property by Wiltrout himself.

The complaint alleged that in March, 1894, the contract was varied by the parties so that the selling price was fixed at $40,000, and the commissions were reduced to four per cent. instead of $5,000. The complaint also alleges the performance of all the conditions of the contract on their part in the way of advertising and making efforts to sell, and

that one of their subagents, one Riley, made efforts to sell
the same to one Dr. Sam C. Johnson; and that after the re-
duction in price the plaintiffs made further efforts to sell
the same to Dr. Johnson at the reduced price. It is then
alleged that on May 31, 1894, "the defendant *Holmes Sani-
tarium* and I. D. Wiltrout sold the Holmes Sanitarium to
Dr. Sam C. Johnson." Judgment was demanded for the
commission of four per cent. upon $40,000, or $1,600.

The answer alleged, in substance, entire lack of authority
on the part of Wiltrout to make the contract on behalf of
the corporation; also that the contract was annulled and a
new and different one made; that the plaintiffs wholly failed
to find any purchaser at the price named either in the orig-
inal or the new contract.

The trial was by the court, jury trial being waived. Much
testimony was introduced showing the efforts made by the
plaintiffs to sell the property. It appears by the correspond-
ence that on the 15th of February, 1894, the plaintiffs be-
came satisfied that they could not sell the property for
$65,000, and they wrote a letter to Wiltrout, stating that
fact, and proposing to undertake to sell it for $40,000,
and inclosing a blank agreement, changing the original
agreement so that it could be sold for $40,000 instead
of $65,000, and allowing plaintiffs $3,000 instead of $5,000
commissions, "all other conditions and terms of the orig-
inal contract to remain unchanged." Dr. Wiltrout an-
swered this letter, refusing to agree to the change or to sign
the agreement; and it was never signed. Some other cor-
respondence followed between the parties, which is not nec-
essary to be stated. Mr. Marshall Riley, a subagent, was
endeavoring to effect a sale to Dr. Johnson, and on the 15th
day of March, 1894, the plaintiffs wrote the defendant the
following letter: "*Dear Doctor:* We have been in corre-
spondence with Mr. Riley, and he will not do anything more
unless you will make a contract with us, agreeing to take

$40,000 for the sale of the sanitarium, and giving six months from date in which to make sale. If you will give us such a contract, we will accept four per cent. as our commission. Let us know by return mail, and we will draw contracts and send to you. Respectfully, HUTCHINSON & JONES." In reply to this Wiltrout wrote, March 17, 1894, as follows: "If you can effect a sale of the Holmes Sanitarium at once, closing the sale inside ten days, at $42,000, we will allow you four per cent., and are ready to bind ourselves to pay this sum when cash is paid over to us. We must receive the entire sum coming to us in cash, and the sale must not include our personals and my wife's piano. Respectfully, I. D. WILTROUT." There does not appear to have been any reply to this letter, and on the 21st of March, 1894, Wiltrout wrote another letter to the plaintiffs in which he says: "I hold the property now at $40,000. Inasmuch as our former contract *is practically annulled*, I make you the following proposition: You sell the property for $40,000, your commission being four per cent.; the terms of sale to be as follows: The purchaser to assume the first mortgage of $20,000, and the remaining $20,000 to be paid in cash or its equivalent; and $2,000 of this $20,000 that is coming to us must be paid at once, to bind the contract of sale, and the remainder to be paid when possession will be taken, and this can be given in five days. Let me hear from you at once. Yours truly, I. D. WILTROUT." To this letter the plaintiffs replied March 23, 1894, as follows: "*Dear Doctor:* We will push matters now at this end of the line, and see what we can accomplish under your new figures, to wit, $40,000 for the Holmes Sanitarium, commission four per cent.; $20,000 cash and the assumption of the mortgage for $20,000. Will write you every day or two as to progress made. Respectfully, HUTCHINSON & JONES." The plaintiffs thereafter wrote Dr. Johnson offering the property to him at $40,000, but he declined.

The court found that Wiltrout had authority to make the

contract set out in the complaint; that it had not been re-
scinded, but that it had been modified only as to the selling
price and the amount of the commission; that the stipula-
tion to pay plaintiffs $1,000 in case Wiltrout sold it without.
assistance of plaintiffs remained in full force and effect; that
plaintiffs failed to find a purchaser at any of the amounts
named, and hence were not entitled either to the $5,000 or
the four per cent. commission; but that, Wiltrout having sold
the property about June 1, 1894, within six months after the
date of the contract, to Dr. Sam C. Johnson, and the corpo-
ration having ratified such sale, the plaintiffs were entitled
to recover $1,000 of the defendant under the written agree-
ment.   Judgment was rendered for the plaintiffs for $1,000
and costs, and the defendant appealed.

For the appellant there was a brief by *Baker & Helms,*
and oral argument by *E. W. Helms.*

For the respondents there was a brief by *James A. Frear*
and *S. J. Bradford,* and oral argument by *Mr. Frear.*

WINSLOW, J.   We find it unnecessary to consider or decide
the question as to the power of Wiltrout to make the original
contract in question on behalf of the corporation.   Whether
he had power to bind the corporation by that contract with-
out authority from the board of directors or not, it seems
entirely certain to us that, conceding the contract to be valid
and binding on the corporation, it was annulled and rescinded
*in toto* by the parties through their correspondence in Feb-
ruary and March, 1894.   This correspondence is set forth
quite fully in the statement of the case, and it will not be
necessary to repeat it here.   It is enough to say that after
much correspondence Dr. Wiltrout wrote the plaintiffs on
March 21st that " As our *former contract is practically an-
nulled,* I make you the following proposition."   Then fol-
lows a clear and complete proposition needing no help nor
aid from the former contract.   To this letter and proposition

the plaintiffs replied, making no objection to the statement that the former contract was annulled, and accepted the new proposition. We can view this as nothing short of an abandonment and abrogation of the old contract and the substitution of another therefor. This new contract contained no provision for the payment of $1,000, or any sum, in case Wiltrout sold the sanitarium without the assistance of the plaintiffs, and hence there can be no recovery. The plaintiffs cannot recover the four per cent. because they did not produce a purchaser, and they cannot recover the $1,000 because the agreement to pay that sum had been abrogated by mutual consent.

*By the Court.*— Judgment reversed, and action remanded with direction to enter judgment for the defendant dismissing the plaintiffs' complaint.